IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| IN RE: <br><br> MARGO ANGELA JIMENEZ, <br><br> DEBTOR | CASE NO. 19-30018-JPS <br><br> CHAPTER 7 |
| FIDELITY BANK, <br><br> PLAINTIFF, <br><br> VS. <br><br> MARGO ANGELA JIMENEZ, <br><br> DEFENDANT. | ADV. PROC. NO.19-3009-JPS |

**FIRST AMENDED COMPLAINT TO EXCEPT DEBTS FROM DISCHARGE PURSUANT TO 11 U.S.C. § 523**

Comes now the Plaintiff, Fidelity Bank ("Fidelity"), a creditor and party in interest in the above-styled bankruptcy case, through its counsel, and pursuant to Rule 7001(6) of the Federal Rules of Bankruptcy Procedure, files this Complaint to Except Debts from Discharge Pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(6). In support thereof, Fidelity respectfully shows the Court as follows:

**Jurisdiction**

1. This adversary proceeding is brought pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(6). Jurisdiction to adjudicate this matter is vested in this Court pursuant to 28 U.S.C. § 1334, and this adversary proceeding is properly before this Court pursuant to 28 U.S.C. § 157(a). This action is a core proceeding as designated by 28 U.S.C. § 157(b)(2)(A) and (I). Fidelity consents to the final orders of the Bankruptcy Court.

489225:1:ATLANTA

## Parties

2. Margo Angela Jimenez, aka Margo Angela Jimenez-Menke (the "Debtor") filed a petition for relief in the Middle District of Georgia under Chapter 7 of the Bankruptcy Code on January 8, 2019 ("Petition Date"). The debtor may be served with service of process at 820 Carl Davis Rd, NW, Monroe Georgia 30656.

3. Fidelity is a National Bank headquartered in Atlanta, Georgia.

## Factual Allegations

4. The Debtor is a doctor of podiatric medicine. At the time of her bankruptcy petition, the Debtor was one of the principals in Georgia Ambulatory Surgery Center, LLC, A. Louis Jimenez D.P.M., P.C. and Primera Podiatry Laser and Foot Spa, P.C. (collectively, "Primera").

5. Fidelity is the holder of two Small Business Administration loans on which the Debtor is a Guarantor.

6. On January 31, 2014, as modified on April 4, 2014, Fidelity made Loan Number XXXX0401 in the face amount of $725,000.00 to Primera. To secure that loan, Primera pledged a security interest in all of the assets of the business including furnishings, fixtures, equipment, accounts receivable and intangibles. As of the Petition Date, Loan Number XXXX0401 had a balance due of not less than $413,208.30. Interest, costs and attorney's fees continue to accrue.

7. On October 4, 2017, Fidelity made Loan Number XXXX4101 in the face amount of $1,485,000.00 to Primera. To secure that loan, Primera pledged a security interest in all of the assets of the business including furnishings, fixtures, equipment, accounts receivable and intangibles. As of the Petition Date, Loan Number XXXX4101 had a balance due of not less than $1,432,345.47. Interest, costs and attorney's fees continue to accrue. The proceeds of Loan

Number XXXX4101 were used by Primera to build out and equip an ambulatory surgical center located at 2220 Wisteria Drive, S.W., Snellville, Georgia 30078 (the "Surgery Center").

8. In addition to the Debtor, the other principals of Primera as of the Petition Date were her brother, Dorian Louis Jimenez, Jason Elliott Morris and his wife, Patricia Whitmore Morris (collectively with the Debtor, the "Doctors"). Each of these principals are doctors of podiatric medicine and are guarantors of the indebtedness claimed by Fidelity.

9. At the time of the Surgery Center loan closing on October 4, 2017, each of the Doctors represented in writing that the partner equity value of Primera was $500,000 per each one third (1/3) share of their respective interests for a total business valuation of $1,500,000.00. On information and belief, Primera began to experience financial difficulties in around April of 2018. Neither Primera nor the Doctors alerted Fidelity to any financial stress on the business, notwithstanding that Fidelity had loaned Primera $1,485,000.00 just six (6) months earlier for the Surgery Center.

10. As of the Petition Date, Primera was insolvent.

11. Just prior to the Petition Date, Primera closed its doors.

12. As of the Petition Date, the Debtor was unemployed and according to her Bankruptcy Schedule I was "about to start new job." Prior to becoming "unemployed" by Primera, the Debtor disclosed making over $250,000.00 in 2017 and $107,000.00 in 2018 per her Statement of Financial Affairs. On information and belief, Fidelity alleges that that Doctor Margo Jimenez obtained employment with Village Podiatry Group, LLC at a level commensurate with her prior compensation with Primera by not later than January 16, 2019.

13. The same day the Debtor filed her case, her brother, Dorian Louis Jimenez filed Chapter 7 in the Bankruptcy Court for the Northern District of Georgia (Case Number 19-20028-

JRS), followed by Jason Elliot Morris and his wife, Patricia Whitmore Morris (Case Number 19-50470-WLH) on January 9, 2019.

14. In the bankruptcy case of Doctors Jason and Patricia Morris, they represented in Schedule I that they were "unemployed" as of their petition date, that their income was zero and that they did not expect any increase in the year to come.

15. For the calendar year 2017, Doctors Jason and Patricia Morris disclosed joint income of $407,500.00 in 2017 and $93,750.00 for 2018 in their Statement of Financial Affairs. Just thirty-one (31) days after becoming "unemployed", Doctors Jason and Patricia Morris testified that they had secured new employment with Village Podiatry Group, LLC with a combined income of $340,000.00 per year. On information and belief, their employment with Village Podiatry Group, LLC commenced not later than January 16, 2019.

16. As to the bankruptcy case of Doctor Dorian Jimenez, he was unemployed as of his petition date and according to his Bankruptcy Schedule I was "about to start new job." Prior to becoming "unemployed" by Primera, Dorian Jimenez disclosed making over $253,285.00 in 2017 and $106,153.00 in 2018 per his Statement of Financial Affairs. On information and belief, Fidelity alleges that Doctor Dorian Jimenez obtained employment with Village Podiatry Group, LLC at a level commensurate with his prior compensation with Primera by not later than January 16, 2019.

17. At a point in time prior to the Petition Date, the Doctors commenced negotiations with Extremity Healthcare, Inc. and its wholly owned subsidiary, Village Podiatry Group, LLC (collectively "Village") for the acquisition of Primera for less than reasonably equivalent value. On information and belief, Fidelity alleges that the Doctors aided and abetted Village in the determination of which assets of Primera, such as patient records and EMR, had value which could

be transferred to Village in consideration of the offer of substantial salaries to the Doctors. Those negotiations with the Doctors were led by Jim Henderson on behalf of Village for an undetermined length of time prior to the Petition Date.

18. In pertinent part, Village offered the Doctors future employment in exchange for the valuable patient lists, electronic medical records ("EMR"), good will and other intangibles of Primera which had been a long established practice since May 25, 1983. Village further strategized with the Doctors on how best to acquire the leased space at the Surgery Center and acquire the equipment over which Fidelity holds a security interest at a liquidation price such that the newly built out Surgery Center, which was funded by Fidelity, could be recapitalized without paying Fidelity or other creditors for the true value of the practice.

19. On, or about, January 16, 2019, just days after the Petition Date, the Doctors and Village executed a HIPAA Business Associate Agreement whereby all of the patient lists and EMR of Primera, covering 35 years of medical practice, were transferred to the custody and control of Village for no consideration other than the retention of the Doctors. On January 16, 2019, Village entered into a Letter Agreement executed by Doctor Dorian Jimenez on behalf of the "Primera Physicians" for the provision of services (collectively the "Village Agreements"). Immediately upon the execution of the Village Agreements, the websites of both Primera and Village were altered to direct Primera patients to Village. Further, Village posted that it would soon be reopening the Primera Surgery Center.

20. The First Meeting of Creditors of Doctors Jason and Patricia Morris on February 11, 2019, was the first date on which Fidelity learned that Primera had ceased operations. Following that date, the Doctors and their agents made themselves generally unavailable to assist

Fidelity in securing its collateral including patient records, EMR, accounts receivable access or the company bank accounts.

21. Fidelity alleges that all of the actions undertaken by the Doctors to secure employment with Village were done while Primera was in the "zone of insolvency," and consequently, the Doctors owed a fiduciary duty to Fidelity and other creditors not to act in their own self-interest or financial benefit.

22. Fidelity alleges that as principals of Primera, the Doctors owed a duty of good faith, care and loyalty to creditors which they breached by transferring the remaining assets of Primera to Village for no consideration other than its offer of employment to the Doctors at substantial salaries. As the blanket lienholder over all of the assets of Primera, Fidelity suffered a significant loss in the value of its collateral through the transfer of the Primera assets to Village by the Doctors for less than reasonably equivalent value.

23. In furtherance of the scheme to purchase the Surgery Center for less than reasonably equivalent value, Jim Henderson of Village began making repeated attempts to solicit a liquidation price from Fidelity in a series of phone calls and e-mails directed to the bank on, or about, February 26, 2019 and continuing until after March 6, 2019. These calls included veiled threats that Fidelity did not want "to get in the news" in the bank's efforts to secure its collateral.

24. On February 25, 2019, Fidelity filed a "Verified Complaint and Petition for Appointment of Receiver" in the Superior Court of Gwinnett County, Georgia (Case Number 19-A-01616-9). After service and notice to Primera, Primera consented to the receivership. By Order entered on March 7, 2019, Hays Financial Consulting, LLC was appointed as Receiver and has since set about to marshal the assets of Primera.

## Count One – Fraud or Defalcation

## 11 U.S.C. §523(a)(4)

25. Fidelity realleges and reavers each and every allegation of Paragraphs 1-24, above, as if fully set forth herein.

26. A discharge under 11 U.S.C. §727 does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity. See, 11 U.S.C. §523(a)(4). The actions taken by the Debtor to transfer the business assets of Primera to Village for less than reasonably equivalent value to her own benefit while Primera was in the "zone of insolvency" constitutes either fraud or defalcation while acting in a fiduciary capacity.

27. Fidelity alleges that the indebtedness owed by the Debtor should be excepted from discharge as a direct and proximate cause of the Debtor's breach of her fiduciary duty of good faith, care and loyalty to Fidelity as the first lien holder which she breached by transferring the remaining assets of Primera to Village for no consideration other than the offer of employment by Village at a substantial salary.

28. Fidelity claims a non-dischargeable judgment against the Debtor for not less than $1,845,553.79, plus interest, fees and costs of court, less the net proceeds of the orderly liquidation being undertaken by the Receiver.

WHEREFORE, the premises considered, Fidelity Bank demands the entry of a non-dischargeable judgment against the Debtor/Defendant, Margo Angela Jimenez, in the amount of not less than $1,845,553.79, plus interest, reasonable attorney's fees and costs of court, less the net proceeds of the orderly liquidation being undertaken by the Receiver, along with such other relief as may be deemed appropriate.

### Count Two – Embezzlement

### 11 U.S.C. §523(a)(4)

29. Fidelity realleges and reavers each and every allegation of Paragraphs 1-28, above, as if fully set forth herein.

30. The Debtor committed embezzlement by fraudulently selling and/or converting Fidelity's collateral by transferring the remaining assets of Primera to Village for no consideration other than the offer of future employment by Village at a substantial salary.

31. Debtor committed embezzlement by fraudulently selling and/or converting Fidelity's collateral by transferring the remaining assets of Primera to Village without notice to Fidelity or consideration of Fidelity's interest in the collateral.

32. Fidelity entrusted the collateral to the Debtor and Primera, and the Debtor converted it to his own use with the intent to defraud.

33. The circumstances described herein indicate fraud, including but not limited to the following:

    a. That Debtor never told Fidelity that Primera had closed its doors until the First Meeting of Creditors in the bankruptcy case of Defendants Jason and Patricia Morris;

    b. That Debtor engaged in negotiations behind Fidelity's back with Village to transfer valuable assets, upon which Fidelity had a valid security interest, just prior to all of Primera's principals filing bankruptcy;

    c. That the Debtor represented in his bankruptcy schedules that he was unemployed as of the filing of the petition; and

8

d. That the Doctors, including Debtor, entered into agreements to transfer Fidelity's valuable collateral solely in exchange for future employment with Village mere days after filing bankruptcy.

34. Fidelity has been damaged as a direct and proximate result of the Debtor's embezzlement as described above.

35. The damages incurred by Fidelity as a result of the Debtor's acts, omissions and misrepresentations should be exempt from discharge pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, the premises considered, Fidelity Bank demands the entry of a non-dischargeable judgment against the Debtor/Defendant, Dorian Louis Jimenez, in the amount of not less than $1,845,553.79, plus interest, reasonable attorney's fees and costs of court, less the net proceeds of the orderly liquidation being undertaken by the Receiver, along with such other relief as may be deemed appropriate.

### Count Three – Willful and Malicious Injury
### 11 U.S.C. §523(a)(6)

36. Fidelity realleges and reavers each and every allegation of Paragraphs 1-35, above, as if fully set forth herein.

37. A discharge under 11 U.S.C. §727 does not discharge an individual debtor from any debt for willful and malicious injury. See, 11 U.S.C. §523(a)(6). As a guarantor of the debt owed to a senior lienholder, the Debtor owes a duty to Fidelity not to dissipate the collateral of Fidelity to her own benefit. The actions taken by the Debtor to transfer the business assets of Primera to Village for less than reasonably equivalent value while Primera was in the "zone of insolvency" for her own benefit constitutes willful and malicious conduct to the detriment of Fidelity.

38. Fidelity alleges that the indebtedness owed by the Debtor should be excepted from discharge as a direct and proximate cause of the Debtor's willful and malicious conduct as to the transfer of the "good will", patient lists and EMR of Primera to Village.

39. Fidelity claims a non-dischargeable judgment against the Debtor for not less than $1,845,553.79, plus interest, fees and costs of court, less the net proceeds of the orderly liquidation being undertaken by the Receiver.

WHEREFORE, the premises considered, Fidelity Bank demands the entry of a non-dischargeable judgment against the Debtor/Defendant, Margo Angela Jimenez, in the amount of not less than $1,845,553.79, plus interest, reasonable attorney's fees and costs of court, less the net proceeds of the orderly liquidation being undertaken by the Receiver, along with such other relief as may be deemed appropriate.

/s/ Eric J. Breithaupt
Eric J. Breithaupt
Georgia Bar No. 596142
ebreithaupt@stites.com
Counsel for Plaintiff

**STITES & HARBISON PLLC**
303 Peachtree Street, N.E.
2800 Sun Trust Plaza
Atlanta, GA 30308
Telephone: (404) 739-8800
Facsimile: (404) 739-8870

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day served the foregoing *First Amended Complaint to Except Debts from Discharge Pursuant to 11 U.S.C. § 523* by depositing a copy of same via ECF/Pacer delivery and in the United States Mail with adequate postage annexed thereon, properly addressed to:

> David S. Klein
> ROUNTREE LEITMAN & KLEIN, LLC
> Century Plaza I
> 2987 Clairmont Road, Suite 175
> Atlanta, Georgia 30329
> dklein@rlklawfirm.com

Done this 29th day of May, 2019.

*/s/ Eric J. Breithaupt*
Eric J. Breithaupt
Georgia Bar No. 596142