**SIGNED this 10 day of October, 2019.**



_____
**James P. Smith
Chief United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 7 |
| MARGO ANGELA JIMENEZ, | : | Case No. 19-30018-JPS |
|     Debtor | : | |
| | : | |
| FIDELITY BANK, | : | |
|     Plaintiff | : | |
|     vs. | : | Adversary Proceeding |
| | : | No. 19-3009, 19-3015 and 19-3016 |
| | : | (Consolidated) |
| MARGO ANGELA JIMENEZ, et al, | : | |
|     Defendants | : | |

BEFORE

James P. Smith
United States Bankruptcy Judge

APPEARANCE:

    For Plaintiff:                    Eric J. Breithaupt
                                      Stites & Harbison, PLLC
                                      303 Peachtree Street
                                      2800 SunTrust Plaza
                                      Atlanta, GA 30308

    For Defendant                David Scott Klein
    Margo Angela Jimenez:     Rountree Leitman & Klein, LLC
                                      2987 Clairmont Road
                                      Suite 175
                                      Atlanta, GA 30329

    For Defendant
    Dorian Louis Jimenez:      David Scott Klein
                                      William A. Rountree
                                      Rountree Leitman & Klein, LLC
                                      2987 Clairmont Road
                                      Suite 175
                                      Atlanta, GA 30329

    For Defendants
    Jason Elliott Morris and
    Patricia Whitmore Morris:    Will B Geer
                                      Wiggam & Geer, LLC
                                      Suite 1245
                                      50 Hurt Plaza SE
                                      Atlanta, GA 30303

**MEMORANDUM OPINION**

In these consolidated adversary proceedings, Plaintiff seeks a determination that Defendants' debts are nondischargeable under 11 U.S.C. § 523(a)(4) and (6). Defendants have filed motions to dismiss Plaintiff's complaints. The Court, having considered the motions to dismiss, the complaints, the briefs of counsel and the applicable law, now publishes this memorandum opinion.

**Motion to Dismiss Standard**

As Judge Laney recently explained in the case of <u>Sheffield v. United States of America (In re Sheffield)</u>, 2019 WL 3986290 (August 22, 2019):

> Under Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding under Federal Rule of Bankruptcy Procedure 7012, a court may dismiss an action where the complaint fails to state a claim upon which relief can be granted. "The scope of review [in a Rule 12(b)(6) motion] must be limited to the four corners of the complaint." *St. George v. Pinellas Co.*, 285 F.3d 1334, 1337 (11th Cir. 2002). And where the complaint has been amended, as it has here, the court's review is limited only to the operative complaint, even where the original complaint contained allegations that may have supported dismissal. See *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 173 (3rd Cir. 2013) ("[A]t the motion to dismiss stage, when the district court typically may not look outside the four corners of the amended complaint, the plaintiff cannot be bound by allegations in the superseded complaint."); *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1205 (7th Cir. 1998) ("A court cannot resuscitate...facts [from an original complaint] when assessing whether the amended complaint states a viable claim.")
>
> When evaluating the merits of a Rule 12(b)(6) motion, a court must construe the pled allegations in the light most favorable to the

>plaintiff and accept them as true. *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005). Further, "[ t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. As the Supreme Court noted in *Twombly*, "a well-plead[] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." 550 U.S., at 556.

## Procedural History

Margo Angela Jimenez filed a Chapter 7 petition in this Court on January 8, 2019. Dorian Louis Jimenez and Jason Elliot Morris and his wife, Patricia Whitmore Morris, filed Chapter 7 petitions on January 8 and 9, 2019 respectively, in the Bankruptcy Court for the Northern District of Georgia. (The four debtors will be referred to as "Defendants" and January 8 and 9, 2019 will be referred to, collectively, as "Petition Date"). Plaintiff filed a complaint, which it later amended, in each of the three bankruptcy cases. After Defendants filed motions to dismiss, the two adversary proceedings pending in the Bankruptcy Court for the Northern District of Georgia were transferred to this Court and consolidated into the adversary proceeding pending against Margo Angela Jimenez (Adv. Pro. No. 19-3009).

## Factual Allegations

Accepting the allegations in the amended complaints as true, the relevant facts are as follows. Defendants are doctors of podiatric medicine and were principals in Georgia Ambulatory Surgery Center, LLC, A. Louis Jimenez D.P.M., P.C. and Primera Podiatry Laser

and Foot Spa, P.C. (collectively "Primera").

On January 31, 2014, as modified on April 4, 2014, Plaintiff made a loan of $725,000 to Primera. To secure the loan, Primera pledged a security interest in all assets of the business including furnishings, fixtures, equipment, accounts receivable and intangibles. As of the Petition Date, the loan had a balance due of not less than $413,208.30.

On October 4, 2017, Plaintiff made a loan of $1,485,000 to Primera. To secure the loan, Primera again pledged a security interest in all assets of the business including furnishings, fixtures, equipment, accounts receivable and intangibles. The loan proceeds were used by Primera to build out and equip an ambulatory surgical center (the "Surgery Center"). As of the Petition Date, the loan had a balance due of not less than $1,432,345.47. Defendants are guarantors on both the January 2014 and October 2017 loans.

Primera began to experience financial difficulties around April 2018. Neither Primera nor Defendants alerted Plaintiff to any financial stress on the business.

Sometime prior to the Petition Date, Defendants commenced negotiations with Extremity Healthcare, Inc. and its wholly owned subsidiary, Village Podiatry Group, LLC (collectively "Village") for the acquisition of Primera for less than reasonably equivalent value. Defendants aided and abetted Village in the determination of which assets of Primera had value which could be transferred to Village. Village offered Defendants future employment in exchange for the patient lists, electronic medical records ("EMR"), good will and other intangibles of Primera. The negotiations with Defendants continued for an undetermined length of time prior to the Petition Date.

Village further strategized with Defendants on how best to acquire the leased space at the

5

Surgery Center and acquire the equipment in which Fidelity held a security interest at a liquidation price such that the newly built out Surgery Center, which was funded by Plaintiff, could be recapitalized without paying Plaintiff or other creditors for the true value of the practice.

Just prior to the Petition Date, Primera closed its doors. Defendants filed for Chapter 7 relief on January 8 and 9, 2019. As of the Petition Date, Primera was insolvent and Defendants were unemployed.

On or about January 16, 2019, Defendants and Village executed a HIPAA Business Associate Agreement whereby all patient lists and EMR of Primera, covering 35 years of podiatric practice, were transferred to the custody and control of Village for no consideration other than the retention of Defendants as employees. As the blanket lien holder of all of the assets of Primera, Fidelity suffered a significant loss in the value of its collateral through the transfer of the Primera assets to Village by Defendants for less than reasonably equivalent value. Also on January 16, 2019, Village entered into a Letter Agreement executed by Defendant Dorian Jimenez on behalf of the "Primera Physicians" for the provision of services (collectively the "Village Agreements"). Defendants obtained employment no later than January 16, 2019, with Village at a level commensurate with their prior compensation with Primera. Immediately upon the execution of the Village Agreements, the web sites of both Primera and Village were altered to direct Primera patients to Village. Further, Village posted that it would soon be reopening the Pimera Surgery Center.

Plaintiff first learned that Primera had ceased operations at the first meeting of creditors of Defendants Jason and Patricia Morris on February 11, 2019. Thereafter, Defendants and their agents made themselves generally unavailable to assist Plaintiff in securing its collateral

including patient records, EMR, accounts receivable access or the company bank accounts.

## ANALYSIS

In Count One of its amended complaint, Plaintiff asserts a breach of fiduciary claim under § 523(a)(4), which, in part, bars the discharge of a claim "for fraud or defalcation while acting in a fiduciary capacity...". Defendants argue that Plaintiff's claim must fail because no express or technical trust existed that created a fiduciary relationship. In the case of Quaif v. Johnson, 4 F.3d 950 (11th Cir. 1993), the Eleventh Circuit explained:

> The language of § 523(a)(4) is similar, but not identical, to provisions of the various bankruptcy statutes in effect since 1841. Although the wording has changed slightly, all of the versions have referred to "defalcation" and to "fiduciary capacity" or "fiduciary character." The Supreme Court has consistently held that the term "fiduciary" is not to be construed expansively, but instead is intended to refer to "technical" trusts. *See Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844); *Upshur v. Briscoe*, 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1891); *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). Unfortunately, the Supreme Court has not spoken on this issue since the *Davis* case, leaving the lower courts to struggle with the concept of "technical" trusts.
>
> In nineteenth century jurisprudence, the concept of "trust" generally fell into two categories: (1) a voluntary trust, created by contract, often referred to as an "express" trust, and (2) a trust created by operation of law, such as a constructive trust or resulting trust, which generally served as a remedy for some dereliction of duty in a confidential relationship, regardless of the intentions of the parties. *In re Turner*, 134 B.R. 646, 650 (Bankr. N.D. Okl. 1991). In the early judicial interpretation of the predecessors to § 523(a)(4), the courts seemed to include the voluntary, "express" trust within the scope of "fiduciary capacity," while excluding the involuntary resulting or constructive trust from the scope of the exception. *See Chapman. Davis* and other cases also articulated a requirement that the trust relationship have existed prior to the act which created the debt in order to fall within the statutory exception. *Matter of Angelle*, 610 F.2d 1335 (5th Cir. 1980).

Id. at 953 (footnote omitted). Thus, to prevail on a claim under § 523(a)(4), a plaintiff must show the existence of an express trust which existed *prior* to the creation of the debt.

Relying on the case of <u>Airlines Reporting Corp. v. Ellison (In re Ellison)</u>, 296 F.3d 266 (4th Cir. 2002), Plaintiff argues that Defendants' contractual obligation to preserve Plaintiff's collateral gave rise to a fiduciary duty. However, Plaintiff's reliance on *Ellison* is misplaced. In that case, a travel agency company entered into a contract with Airlines Reporting Corporation. ("ARC"). ARC was an agent for issuing tickets for various airlines and collecting payments for those tickets. The agreement between the travel agency and ARC:

> provided for a trust arrangement, under which [the travel agency] collected payments for the sales of airline tickets, placed the proceeds of those sales in a trust account with [a] Bank for the benefit of ARC, and reported to ARC weekly on the ticket sales made to customers. The deposit proceeds, excluding [the travel agency's] commissions, were designated as "the property of the carrier and [were to] be held in trust until accounted for to the carrier." After [the travel agency] submitted its sales report to ARC, ARC paid itself with checks that ARC drew on the trust account.

Id. at 268. Because the travel agency failed to put ticket sales proceeds into the trust account and failed to report the sales to ARC, the court held that the travel agency had breached its fiduciary duty. Id. at 271. By comparison, in the case at bar, there is no allegation in the complaint that the loan documentation between the parties contains any similar type "trust" language.

Alternatively, Plaintiff argues that once Primera entered the "zone of insolvency" or became insolvent, Defendants, as principals of Primera, owed Plaintiff a fiduciary obligation to preserve its assets for the benefit of Plaintiff. Plaintiff argues that Defendants breached this duty when they began negotiating with, and then transferred Primera's assets to, Village.

Under Georgia law:

> When a corporation becomes insolvent, its directors are "bound to manage the remaining assets for the benefit of its creditors, and cannot in any manner use their powers for the purpose of obtaining a preference or advantage to themselves." Ware v. Rankin, 97 Ga.App. 837, 104 S.E. 2d 555 (1958).

Hickman v. Hyzer, 261 Ga. 38, 40, 401 S.E. 2d 738, 740 (1991).[1] Accordingly, if Primera became insolvent, Defendants owed a fiduciary duty to Plaintiff and other creditors to preserve the assets of Primera for the benefit of creditors. Further, if Defendants transferred the assets of Primera to another entity for personal benefit, they would be in breach of this duty.

However, as explained above, to satisfy the requirements of § 523(a)(4), the trust relationship must exist prior to the creation of the debt. Here, the debt on which Plaintiff asserts its § 523(a)(4) claim arose when the loans were made in 2014 and 2017. There is no allegation that Primera was insolvent at that time. Rather, the complaint alleges that Primera was insolvent as of the Petition Date (see Amended Complaint, Doc. No. 15, paragraph 10). Thus, any fiduciary duty of Defendants arising from the insolvency of Primera arose after the debt was incurred.

This case is similar to the case of Transmontaigne Prod. Serv., Inc. v. Daniel (In re Daniel), 2012 WL 1999264 (Bankr. M.D. Ga. June 4, 2012). There, the debtors owned a fuel supply company. The company purchased fuel from plaintiff on credit, which the debtors had personally guaranteed. The company failed to pay for the fuel purchases, generating a debt of

---

[1] Plaintiff has not cited, and the Court has not found, any case law in Georgia recognizing that a fiduciary duty arises when a corporation enters the "zone of insolvency". Further, as one court has noted, there is no generally accepted meaning for the term "zone of insolvency". Kipperman v. Onex Corp., 411 B.R. 805, 845 (N.D. Ga. 2009).

9

over $647,000. When the debtors filed chapter 7, the plaintiff asserted, inter alia, a claim under § 523(a)(4), alleging that when the fuel supply company became insolvent, debtors owed a fiduciary duty to manage its assets for the benefit of its creditors and that the debtors breached this fiduciary duty when they transferred assets of the company for their personal benefit. When the plaintiff moved for summary judgment, the court found that the debt for fuel purchases arose before the company became insolvent. Since the fiduciary duty arose after the creation of the debt, the court held that the plaintiff was not entitled to summary judgment on its § 523(a)(4) claim.

Here, the debt was created before any fiduciary duty arose. Accordingly, Plaintiff's § 523(a)(4) breach of fiduciary claim must fail.

In Count Two, Plaintiff asserts a claim under § 523(a)(4), which also bars the discharge of a claim for embezzlement. Plaintiff asserts that Defendants embezzled its collateral when they transferred, without notice to Plaintiff, Primera's assets to Village for no consideration other than an offer of future employment. Plaintiff asserts that it entrusted its collateral to Defendants and Primera and that Defendants converted the collateral to their own use.

The Eleventh Circuit has stated that the term "embezzlement" is defined by federal common law for purposes of § 523(a)(4). Fernandez v. Havana Gardens, LLC, 562 Fed.Appx. 854, 856 (11th Cir. 2014). "Under federal common law, 'embezzlement' is 'the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come.' Id. (quoting United States v. Sayklay, 542 F.2d 942, 944 (5th Cir. 1976)). To prevail on a § 523(a)(4) claim for embezzlement, a creditor must prove that "(1) 'he entrusted property to the debtor,' (2) 'the debtor appropriated the property for a use other than

10

that for which it was entrusted,' and (3) 'the circumstances indicate fraud.'" Kern v. Taylor (In re Taylor), 551 B.R. 506, 521 (Bankr.M.D.Ala. 2016) (citation omitted).  See United States v. Reid (In re Reid), 598 B.R. 674, 681 (Bankr.S.D.Ala. 2019); Jones v. Hall (In re Hall), 295 B.R. 877, 882 (Bankr.W.D.Ark.2003).

Defendants contend that Plaintiff's embezzlement claim under § 523(a)(4) must fail because Plaintiff has failed to show that its property was embezzled.  Plaintiff responds by arguing that its security interest in the Primera collateral is a sufficient ownership interest to support an embezzlement claim.

The courts are split on this issue.

> Many courts hold that a debtor commits an embezzlement under section 523(a)(4) when the debtor sells mortgaged property and fails to remit the proceeds to a properly perfected, secured creditor or consignor.

Jones v. Hall (In re Hall), 295 B.R. 877, 882 (Bankr.W.D.Ark. 2003) (collecting cases).  On the other hand:

> Many courts have held "a mere lien or security interest does not rise to the level of ownership sufficient to support a claim under § 523(a)(4)'s embezzlement provision."

Kraus Anderson Capital v. Bradley (In re Bradley), 507 B.R. 192, 200 (B.A.P. 6th Cir. 2014) (collecting cases).

Neither the Eleventh Circuit nor any court in this district has addressed the issue.  However, relying on the case of First Nat'l Bank of Fayetteville, Arkansas v. Phillips (In re Phillips), 882 F.2d 302, 304-05 (8th Cir. 1989), courts in the southern and norther district of Georgia have ruled that a creditor's security interest in property owned by the debtor is not a

sufficient ownership interest to support an embezzlement claim. See Thompson v. Barbee (In re Barbee), 479 B.R. 193, 208 (Bankr.S.D.Ga.2012); American Gen. Fin. Inc. v. Heath (In re Heath), 114 B.R. 310, 311-12 (Bankr.N.D.Ga.1990).

In Phillips, a corporation gave the bank a security interest in certain proceeds due the corporation under a lease to secure a loan which the debtors, officers and shareholders of the corporation, had personally guaranteed. Upon receipt of the leased proceeds, the corporation deposited the funds into its general account and spent them. The corporation subsequently went out of business and was unable to repay the loan. The debtors filed bankruptcy under Chapter 7. The bank filed an adversary proceeding contending that the debt was nondischargeable under, inter alia, § 523(a)(4) because the debtors had embezzled the funds. The court held:

> Embezzlement, for purposes of [section 523(a)(4)], is the fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come.

In re Phillips, 882 F.2d at 304. (internal quotations and citations omitted). The court then held:

> We...conclude that [the corporation] owned the funds from the checks subject to the security interest of the [b]ank. The [b]ank's security interest does not give it an absolute ownership interest nor does it defeat [the corporation's] ownership interest. Because the funds belonged to [the corporation] subject to [the bank's] security interest, the debtors could not have embezzled funds and the debt is not nondischargeable under section 523(a)(4).

Id. at 304-05.

This court agrees with its sister courts in the northern and southern district of Georgia and holds that a creditor's security interest in property owned by the debtor is an insufficient ownership interest to support a claim under § 523(a)(4). In this case, the property that was

12

transferred was owned by Primera and not Fidelity Bank. Fidelity Bank merely had a security interest in that property. Accordingly, Plaintiff has failed to state an embezzlement claim under § 523(a)(4).

In Count Three, Plaintiff asserts a claim under § 523(a)(6) which bars the discharge of a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Plaintiff asserts that Defendants caused willful and malicious injury by their transfer, for their own benefit, of the business assets of Primera to Village for less than reasonably equivalent value." Plaintiff also asserts that Defendants' obligations are nondischargeable "as a direct and proximate cause of [their] willful and malicious conduct as to the transfer of the 'good will', patient lists and EMR of Primera to Village." Amended Complaint, Doc. No. 15, pp. 9-10. Defendants argue that this claim must fail because, "There are no facts alleged in the Complaint which support the required element of a Section 523(a)(6) claim that [Defendants] intended to willfully and maliciously injure Plaintiff." Docket No. 7, p.6.

Defendants' contention misstates the law in the Eleventh Circuit. As the court held in Maxfield v. Jennings (In re Jennings), 670 F.3d 1329, 1334 (11th Cir.2012):

> We have held that proof of "willfulness" requires 'a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another.'" In re Walker, 48 F.3d 1161, 1163 (11th Cir. 1995) (quoting In re Ikner, 883 F.2d 986, 991 (11th Cir. 1989)). "[A] debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." Id. at 1165...
>
> "Malicious" means 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will'." In re Walker, 48 F.3d at 1164 (quoting In re Ikner, 883 F.2d at 991). To establish malice, "a showing of specific intent to harm another is

13

not necessary." In re Ikner, 883 F.2d at 991.

Defendants' reliance on the case of Eden v. Eden (In re Eden), 584 B.R. 795 (Bankr.N.D.Ga.2018) is misplaced. In that case, the debtor's former husband and business partner asserted a nondischargeability claim under § 523(a)(6), contending that debtor had "engaged in fraudulent transfers, fraudulent conveyances and false representations which inflicted willful and malicious injury on plaintiff...". Id. at 809. The court held:

> Absent a showing that Defendant not just committed fraud willfully and maliciously, but that the resulting injury was intentionally willful and malicious, Defendant is correct that § 523(a)(6) does not pertain to debts for general financial injury caused by fraud because such debts are covered by § 523(a)(2)...Interpreting § 523(a)(6) to cover any or all injuries resulting from fraud that was committed willfully and maliciously would render § 523(a)(2) completely superfluous....Therefore, based on the allegations contained within the Complaint, Plaintiff's objection to Defendants' discharge on a basis of "fraudulent transfers, fraudulent conveyances and false representations," is a claim under § 523(a)(2), not § 523(a)(6).

Id. (internal quotations and citations omitted).

The Eden case is distinguishable from the case at bar because Eden did not involve a deliberate transfer of a creditor's collateral without the creditor's knowledge or permission. Furthermore, to the extent Eden holds that, to establish a § 523(a)(6) claim the creditor must show that a debtor intended to willfully and maliciously injure the creditor, that holding, as explained above, is contrary to Eleventh Circuit precedent.

This case is similar to the case of Monson v. Galaz (In re Monson), 661 Fed.Appx. 675 (11th Cir. 2016). In that case, the debtor and creditor entered into an agreement which provided that the creditor would loan the debtor $130,000 to open an internet café gaming center. The

Case 19-03009   Doc 28   Filed 10/10/19   Entered 10/11/19 08:26:41   Desc Main
Document    Page 15 of 16

agreement provided that the creditor would have a lien on all equipment, fixtures and assets. The creditor would receive a portion of the profits from the business after its loan had been repaid in full. If the business was not profitable or if the parties agreed to terminate the agreement, then all material assets were to be liquidated and first used to pay back the loan.

After the business assets were seized in a law enforcement raid, the creditor informed the debtor that it was terminating the creditor's interest in the business and demanded the assets be liquidated to repay the loan. Instead of doing so, the debtor recovered the seized equipment from law enforcement, which he then used to start another internet center with a new partner. When the creditor eventually obtained the equipment, its value was one-tenth of the loan amount.

At trial, the debtor argued that once he received notice of the creditor's intent to terminate their agreement, he thought the entire agreement was "over, finished and done with." The debtor also did not think the creditor had a valid security interest because the debtor never signed the security agreement.

The court held:

> [The debtor] committed a willful injury because his action of absconding with the Center's equipment and using it to open a new internet center was an intentional act the purpose of which [was] to cause injury or which [was] substantially certain to cause injury....

Id. at 683 (internal quotations and citations omitted).

The court further recognized that:

> Bankruptcy courts within this Circuit have held that, whether or not a lienholder's security interest is properly perfected or recorded, where the debtor has knowledge of the lienholder's claim and subsequently sells or disposes of the property at issue without notice to the lienholder, that act constitutes a willful and malicious injury under § 523(a)(6). See In re Garcia, 442 B.R. 848, 851-52

(Bankr. M.D. Fla. 2011); In re Giffen, 195 B.R. 951, 953-54 (Bankr. M.D. Fla. 1996).

Id. at 684. See also Chrysler Credit Corp. v. Rebhar, 842 F.2d 1257 (11th Cir. 1988) (corporate officer who personally guaranteed corporate borrower's debt and then converted collateral committed willful and malicious injury); Ford Motor Credit Co. v. Owens, 807 F.2d 1556 (11th Cir. 1987) (same).

Defendants in this case assisted in the transfer of Plaintiff's collateral to Village for less than reasonably equivalent value. This action was substantially certain to cause injury to Plaintiff. Accordingly, Plaintiff has stated a claim for relief for willful and malicious injury under § 523(a)(6).

## **CONCLUSION**

Plaintiff has failed to state a claim for relief under § 523(a)(4) and Counts One and Two of its amended complaint will be dismissed. Plaintiff has stated a claim for relief under § 523(a)(6) in Count Three. Defendants' motion to dismiss will be granted as to Counts One and Two and denied as to Count Three.

*END OF DOCUMENT*